UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

BRETT PICOU,

                                         Plaintiff,

-against-

THE CITY OF NEW YORK, DETECTIVE JOHN PHELAN, NEW YORK CITY DEPARTMENT OF EDUCATION, LINDA POUGH, and DEBORAH SMITH,

                                           Defendants.

------------------------------------------------------------------------x

FIRST AMENDED COMPLAINT

13 CV 5327 (RJD) (MDG)

JURY TRIAL DEMANDED

## NATURE OF THE ACTION

1.     This is an action to recover money damages arising out of the violation of Plaintiff's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5.     Plaintiff demands a trial by jury in this action.

## PARTIES

6.     Plaintiff Brett Picou ("Plaintiff" or "Mr. Picou"), an African-American male, is a resident of the County of Queens, City of New York.

7. Defendant The City of New York is a municipal organization organized under the laws of the State of New York.

8. Defendant The City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant The City of New York.

9. The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10. At all times relevant herein, Defendant Police Officer John Phelan ("Phelan") was an officer, employee, and agent of Defendant The City of New York.

11. At all times relevant herein, Defendant Phelan was acting within the scope of his employment with Defendant The City of New York.

12. At all times relevant herein, Defendant Phelan was acting under color of state law.

13. Defendant Phelan is sued in his individual and official capacities.

14. Defendant New York City Department of Education ("NYCDOE") is a domestic municipal public authority, department, or agency of Defendant The City of New York.

15. Defendant The City of New York operates Defendant NYCDOE.

16. Defendants The City of New York and NYCDOE operate, own, and control P.S. 52.

17. Defendants The City of New York and NYCDOE are responsible for the appointment, hiring, training, supervision, promotion, and discipline of teachers, faculty members, supervisors, and staff member.

18. At all times relevant herein, Defendant Linda Pough ("Pough") was a supervisor, employee, agent, and/or servant of Defendants The City of New York and/or NYCDOE.

19. At all times relevant herein, Defendant Pough was acting within the scope of her employment with Defendants The City of New York and/or NYCDOE.

20. At all times relevant herein, Defendant Pough was acting under color of state law.

21. Defendant Pough is sued in her individual and official capacities.

22. At all times relevant herein, Defendant Deborah Smith ("Smith") was an employee, agent, and/or servant of Defendants The City of New York and/or NYCDOE.

23. At all times relevant herein, Defendant Smith was acting within the scope of her employment with Defendants The City of New York and/or NYCDOE.

24. At all times relevant herein, Defendant Smith was acting under color of state law.

25. Defendant Smith is sued in her individual and official capacities.

26. Defendants NYCDOE, Pough, and Smith are collectively referred to herein as "Education Defendants".

## STATEMENT OF FACTS

27. On or about February 15, 2012, Defendant Smith reported to Defendant Pough that Mr. Picou had inappropriately touched several students at P.S. 52.

28. Defendant Smith reported to Defendant Pough that she had "overheard" one student telling several other students that Mr. Picou had wrongly touched her.

29. In fact, Defendant Smith had not overheard anyone make any allegations against Mr. Picou.

30. Upon information and belief, the creation of this false allegation by Defendant Smith was driven by personal animus against Mr. Picou.

31. Defendant Smith reported to Defendant Pough that upon hearing the comments against Mr. Picou, she met with all of these students in a group and discussed the allegations.

32. Upon information and belief, this discussion actually consisted of Defendant Smith coercing students into making allegations against Mr. Picou in an attempt to have Mr. Picou terminated from his job.

33. Defendant Smith reported to Defendant Pough that, as a result of this group discussion, that several students were now complaining that Mr. Picou had wrongly touched them.

34. In fact, Ms. Smith alleged that after this group discussion, there were nine students who were making allegations against Mr. Picou.

35. Defendant Smith knew that this group discussion was against the rules and regulations of Defendants The City of New York and NYCDOE.

36. Defendant Pough knew that this group discussion was against the rules and regulations of Defendants The City of New York and NYCDOE.

37. Defendant Smith knew that her investigation into any alleged sexual misconduct was against the rules and regulations of Defendants The City of New York and NYCDOE.

38. Defendant Pough knew that Defendant Smith's investigation into any alleged sexual misconduct was against the rules and regulations of Defendants The City of New York and NYCDOE.

39.     Upon receiving this information from Defendant Smith, Defendant Pough had Defendant Smith send each one of the nine students into her office to be interviewed by Defendant Pough.

40.     Defendant Pough interviewed each of the nine students.

41.     At the time she interviewed the students, Defendant Pough knew that her investigation into any alleged sexual misconduct was against the rules and regulations of Defendant The City of New York and NYCDOE.

42.     Despite that knowledge, Defendant Pough conducted the interviews anyway.

43.     At the time that Defendant Pough conducted the interviews she knew that the allegations levied against Mr. Picou by Ms. Smith were false.

44.     Defendant Pough knew, among other things, that Defendant Smith had animus towards Mr. Picou; Defendant Smith had improperly conducted an alleged investigation into the allegations; two of the students Defendant Smith alleged to have been improperly touched by Mr. Picou were, in fact, not claiming such; Defendant Smith had coerced the remaining students to make false and identical allegations against Mr. Picou; and that all of the alleged misappropriate conduct had occurred either in full view of faculty, staff, and students, but that there were no complaints or witnesses to the allegations.

45.     Despite the foregoing, Defendant Pough reported to members of the NYPD, and specifically, Defendant Phelan, that Mr. Picou had improperly touched students at P.S. 52.

46.     All of the actions by Defendants Pough and Smith were approved by high ranking, decision-making officials of Defendant NYCDOE, despite the fact that they went against Defendant NYCDOE rules and regulations.

47. Defendant Phelan conducted an investigation into the matter and learned all of the foregoing.

48. Despite learning this, Defendant Phelan took no steps to talk to the two students who had allegedly recanted their stories; took no steps to identify witnesses, teachers, and staff who these alleged acts occurred in front of; took no steps to investigate Defendant Smith's animus against Mr. Picou; and took no steps to determine whether Defendants Pouch and Smith, in conducting improper investigations into these allegations, had improperly coerced and influenced the students into making these allegations.

49. Without a warrant and/or probable cause, Defendant Phelan placed Mr. Picou under arrest on February 23, 2012.

50. Defendant Phelan alleged that the probable cause for the charges was based on the fabricated evidence created by the Defendants against Mr. Picou.

51. At all times relevant herein, Defendants Smith and Pough urged and coerced students to submit false evidence against Mr. Picou, including false statements alleging that Mr. Picou has improperly touched them.

52. At the time of these statement, Defendant Phelan knew, among other things, that Defendant Smith had animus towards Mr. Picou; Defendants Smith and Pough had improperly conducted an alleged investigation into the allegations; two of the students Defendant Smith alleged to have been improperly touched by Mr. Picou were, in fact, not claiming such; Defendants Smith and Pough had coerced the remaining students to make false and identical allegations against Mr. Picou; and that all of the alleged misappropriate conduct had occurred

either in full view of faculty, staff, and students, but that there were no complaints or witnesses to the allegations.

53. At the time that Mr. Picou was arrested, the individual defendants purposefully and maliciously placed the handcuffs on too tightly.

54. The tight handcuffs caused pain, swelling, and bruising to Mr. Picou's wrists.

55. Mr. Picou begged the individual defendants to loosen the handcuffs, but they ignored his pleas.

56. Mr. Picou's arrest was approved at the Subject Location by Defendant John/Jane Doe # 1.

57. The individual defendants spoke with the Queens County District Attorneys' Office, individually and collectively lying to the Queens County District Attorney's Office that Mr. Picou had committed various crimes.

58. Based on these fabricated allegations, the Queens County District Attorney's Office forwarded to Defendant Phelan a Criminal Court Complaint.

59. The Criminal Court Complaint was reviewed and then signed by Defendant Phelan.

60. When reviewing and signing the Criminal Court Complaint, Defendant Phelan knew the allegations contained therein to be false.

61. The executed Criminal Court Complaint was then forwarded by Defendant Phelan to the Queens County District Attorney's Office.

62. Legal process was issued against Mr. Picou, and Mr. Picou was subsequently arraigned, all charges against him being consolidate under one docket number.

63. During the pendency of the criminal proceeding, the individual defendants forwarded false evidence to the Queens County District Attorney's Office, *inter alia*, arrest reports, DD5 Follow-up Reports, complaint reports, and statements.

64. Mr. Picou was brought before a grand jury, which returned a no true bill against Mr. Picou.

65. Based on the no true bill returned by the grand jury, the charges against Mr. Picou were dismissed.

66. Mr. Picou suffered damage as a result of Defendants' actions. Mr. Picou was deprived of liberty, suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983*

67. Mr. Picou repeats and realleges each and every allegation as if fully set forth herein.

68. Defendants, by their conduct toward Mr. Picou as alleged herein, violated Mr. Picou's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

69. As a direct and proximate result of this unlawful conduct, Mr. Picou sustained the damages herein alleged.

## SECOND CAUSE OF ACTION
*Unlawful Stop and Search*

70. Mr. Picou repeats and realleges each and every allegation as if fully set forth herein.

71. The individual defendants violated the Fourth and Fourteenth Amendments because they stopped and searched, and/or caused the stop and search of Mr. Picou without reasonable suspicion.

72. As a direct and proximate result of this unlawful conduct, Mr. Picou sustained the damages herein alleged.

### THIRD CAUSE OF ACTION
*False Arrest*

73. Mr. Picou repeats and realleges each and every allegation as if fully set forth herein.

74. The individual defendants violated the Fourth and Fourteenth Amendments because they arrested and/or caused the arrest of Mr. Picou without probable cause.

75. As a direct and proximate result of this unlawful conduct, Mr. Picou sustained the damages herein alleged.

### FOURTH CAUSE OF ACTION
*Excessive Force*

76. Mr. Picou repeats and realleges each and every allegation as if fully set forth herein.

77. Defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on Mr. Picou.

78. As a direct and proximate result of this unlawful conduct, Mr. Picou sustained the damages herein alleged.

## FIFTH CAUSE OF ACTION
*Denial of Substantive Due Process*

79. Mr. Picou repeats and realleges each and every allegation as if fully set forth herein.

80. The individual defendants created and/or caused the creation of false evidence against Mr. Picou.

81. The individual defendants forwarded and/or caused the forwarding of false evidence to prosecutors in the Queens County District Attorney's Office.

82. In creating false evidence against Mr. Picou, and in forwarding false evidence to prosecutors, and/or causing the false evidence to be created and forwarded to prosecutors, the individual defendants violated Mr. Picou's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

83. As a direct and proximate result of this unlawful conduct, Mr. Picou sustained the damages herein alleged.

## SIXTH CAUSE OF ACTION
*Malicious Abuse of Process*

84. Mr. Picou repeats and realleges each and every allegation as if fully set forth herein.

85. The individual defendants issued and/or caused to be issued legal process to place Mr. Picou under arrest.

86. The individual defendants arrested Mr. Picou in order to obtain collateral objectives outside the legitimate ends of the legal process, among other things, to cover up their unlawful stop and search; fabrication of evidence; and/or animus towards Mr. Picou.

87. The individual defendants pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the Queens County District Attorney's Office and continuing to participate in the prosecution of Mr. Picou.

88. The individual defendants acted with intent to do harm to Mr. Picou without excuse or justification.

89. As a direct and proximate result of this unlawful conduct, Mr. Picou sustained the damages herein alleged.

## SEVENTH CAUSE OF ACTION
*Malicious Prosecution*

90. Mr. Picou repeats and realleges each and every allegation as if fully set forth herein.

91. The individual defendants initiated the criminal proceedings against Mr. Picou by issuing and/or causing to be issued legal process against Mr. Picou.

92. The individual defendants lacked probable cause to commence the criminal proceedings against Mr. Picou.

93. The individual defendants' actions were motivated by actual malice.

94. The criminal proceeding was terminated in Mr. Picou's favor.

95. As a direct and proximate result of this unlawful conduct, Mr. Picou sustained the damages herein alleged.

## EIGHTH CAUSE OF ACTION
*Failure to Intervene*

96. Mr. Picou repeats and realleges each and every allegation as if fully set forth herein.

97. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

98. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

99. As a direct and proximate result of this unlawful conduct, Mr. Picou sustained the damages herein alleged.

## NINTH CAUSE OF ACTION
*Conspiracy under 42 U.S.C. § 1983*

100. Mr. Picou repeats and realleges each and every allegation as if fully set forth herein.

101. The Defendants and members of the Queens County District Attorney's Office jointly participated in the deprivation of Mr. Picou's constitutional rights as set forth herein.

102. The Defendants conspired in the deprivation of Mr. Picou's constitutional rights by collectively lying about Mr. Picou's actions and conduct, and intentionally withholding and/or destroying exculpatory evidence in order to support the Defendants' fabricated version of the events.

103. As a result of the Defendants' malicious efforts to damage Mr. Picou, Mr. Picou's liberty was restricted, and Mr. Picou was restrained, subjected to handcuffing, and, among other things, falsely arrested, and prosecuted.

104. As a direct and proximate result of this unlawful conduct, Mr. Picou sustained the damages herein alleged.

# ELEVENTH CAUSE OF ACTION
*Monell*

105. Mr. Picou repeats and realleges each and every allegation as if fully set forth herein.

106. This is not an isolated incident. Defendant The City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Picou.

107. Defendant The City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

108. Defendant The City of New York, through the NYPD, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

109. This quota policy requires that police officers, including the individual defendants named herein, make a certain number of arrests and/or write a certain number of summonses and desk appearance tickets within an allocated time period.

110. Officers that meet the required number of arrests, summonses, and desk appearance tickets are classified as active officers.

111. Officers that do not meet the required number of arrests, summonses, and desk appearance tickets are classified as inactive officers.

112. Active officers are given promotion opportunities that are not afforded to inactive officers.

113. Active officers are given overtime opportunities, such as security at parades, etc., that are not afforded to inactive officers.

114. The quota policy does not differentiate between arrests, summonses, and desk appearance that are supported by probable cause and ones that are not.

115. Defendant The City of New York, through the NYPD, does nothing to ensure that officers, in trying to fulfill this quota policy, are making arrests and issuing summonses and desk appearance tickets lawfully. There are no post-arrest investigations that are performed, and no policies in place that would prevent abuse of this policy, such as is demonstrated in the instant case.

116. Defendant The City of New York, through the NYPD, does nothing to determine the outcome of the charges levied against arrestees in order to proper counsel officers as to the lawfulness of their arrests/issuance of summonses and desk appearance tickets.

117. The failure of Defendant The City of New York to, *inter alia*, take these steps encourages, *inter alia*, unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury, in that the quota policy provides, *inter alia*, career and monetary incentives to officers, including the individual defendants herein.

118. Defendant The City of New York is estopped from asserting that a quota/productivity policy does not exist and that this policy motivates police officers to violate the rights of individuals. See Bryant v. The City of New York, 022011/2007 (Kings Cnty. Sup.

Ct.) (jury finding that quota policy exists and that it contributed to constitutional rights violations).

119. Defendant The City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

120. Defendant The City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

121. Defendant NYCDOE, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

122. Defendant NYCDOE, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Picou.

123. Given the widespread conduct by the individual defendants herein, in acting against NYCDOE rules and regulations, and in high-level decision-makers of Defendant NYCDOE approving of the individual defendants' courses of action, it is clear that, despite any rules and regulations, Defendant NYCDOE has policies, customs, and practices that go against its own rules and regulations

124. Defendant NYCDOE, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

125. Defendants The City of New York and NYCDOE has training and supervision policies and practices, and/or the lack thereof, which caused their agents, servants, and/or employees, including the individual defendants herein to fail to discharge their duties in accordance with the Constitution of the United States, and the rules and regulations of Defendants The City of New York and NYCDOE, and are indifferent to the consequences.

126. These policies, practices, and customs were the moving force behind Mr. Picou's injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Picou respectfully requests judgment against Defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 8, 2014

/s/
Gregory P. Mouton, Jr., Esq.
The Law Office of Gregory P. Mouton, Jr.
Attorney for Plaintiff
305 Broadway, 14th Floor
New York, NY  10007
Phone & Fax: (646) 706-7481
greg@moutonlawnyc.com